# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In Re: ) | |
| ) | **Chapter 7** |
| **Marla M. Lovell,** ) | |
| ) | |
| Debtor. ) | **Bankruptcy No. 10-02702** |
| ) | |
| | |
| ) | |
| **Marla M. Lovell,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Adversary No. 11-09022** |
| ) | |
| **Iowa Student Loan Liquidity Corp.** ) | |
| **and Educational Credit Management** ) | |
| **Corp.,** ) | |
| ) | |
| Defendants. ) | |

### ORDER ON DEFENDANTS' JOINT MOTION
### FOR SUMMARY JUDGMENT

This matter came before the Court for hearing on Defendants Iowa Student Loan Liquidity Corporation and Educational Credit Management Corporation's Joint Motion for Summary Judgment. Plaintiff-Debtor, Marla M. Lovell, was represented by Steve Klesner. Defendant Iowa Student Loan Association was represented by Matthew McDermott. Defendant Educational Credit Management Corporation was represented by Brooke Van Vliet. After hearing arguments of

counsel, the Court took the matter under advisement.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF THE CASE

Debtor filed for Chapter 7 bankruptcy relief on September 29, 2010.  Debtor received her Chapter 7 discharge on January 5, 2011.  She filed this adversary complaint on April 26, 2011.  The complaint seeks an order from the Court declaring Debtor's student loans are dischargeable under 11 U.S.C. § 523(a)(8) because they would impose an undue hardship.

Defendants, Iowa Student Loan Liquidity Corporation (ISLLC) and Educational Credit Management Corporation (ECMC), filed a Joint Motion for Summary Judgment on December 16, 2011.  They argue that there is no genuine issue of material fact and that Debtor's student loans are nondischargeable because Debtor does not meet the high threshold of undue hardship necessary to discharge student loans under 11 U.S.C. § 523(a)(8).  Debtor objects to Defendants' Motion for Summary Judgment.  Debtor argues that summary judgment is not appropriate because the fact intensive nature of the undue hardship analysis demands determinations of fact at trial.  Debtor also argues that she meets the requirements for undue hardship and her student loan should be discharged.  The Court agrees that the undue hardship analysis is fact intensive and, in this case, required the Court to deny Defendants' Motion for Summary Judgment.

# FACTUAL BACKGROUND[1]

Plaintiff-Debtor Marla Lovell is 39 years old, single, and has no dependents. She attended Southeastern Community College between 1992 and 1994, earning an Associate's degree in education. In 1997, Debtor completed her Bachelor's degree in History and Secondary Education with a minor in Political Science from Western Illinois University. This degree was funded primarily by student loans. Upon completion of this degree, she worked for approximately eight years. During that time, she also took master's level courses through the University of Phoenix. Again, this schooling was funded primarily by student loans. From 2005 to 2007, Debtor completed a full-time master's level program in public administration at Drake University—funded with student loans.

After completing her Master's in Public Administration, Debtor struggled to secure employment in her field of study. From 2006 to 2009, Debtor worked for Wells Fargo, earning approximately $30,000 per year as a loan document specialist and a legal specialist. In 2009, she began working for the University of Iowa Healthcare System as a Donor Development Coordinator. Debtor currently holds this position.

In 2007, upon completion of her Master's degree, Debtor consolidated her private student loans with ISLLC. Currently, she owes $118,749.23 to ISLLC.

---

[1] The facts presented are either undisputed or presented in a light most favorable to Plaintiff/Debtor, the non-moving party.

3

Debtor's obligation to ISLLC calls for repayment over a 20 year period. Debtor's monthly payment is currently $799.50.[2] Her balance has an interest rate of 8.4% per year. Following the repayment schedule, Debtor's monthly payment with ISLLC will increase by approximately 10% every two years. The first increase would occur on March 10, 2013. While attempting to secure employment in her field of study, Debtor deferred her loan. Debtor has used 18 of the available 84 months of deferment. For each month that she defers, the 20 year period is also pushed back.

In addition to these private loans, Debtor also has federal student loans. Debtor consolidated her federal student loans with ECMC. She currently owes $51,842.89 to ECMC. Her monthly payment to ECMC is $297.02 with an interest rate of 6.875%. Debtor's obligation to ECMC calls for a repayment period of 25 years. Debtor's total public and private student loan debt is approximately $170,592.12.

Debtor has no physical or mental disability. Her current job with the University pays a gross annual wage of $44,255.04. When she began her job in 2009, she was earning approximately $40,100.00. She has the potential to receive a raise of approximately 2% per year based on a merit evaluation. Debtor's

---

[2] Debtor disputes that the current payment due is $799.50, however Debtor presented no evidence to support an alternative payment amount, and the evidence shows that $799.50 is her current payment, but that the payment is due to increase in March of 2013.

monthly net pay is $2,534.30.[3] She historically has received an income tax refund. In 2010, when spread out over the course of the year, this refund added $158.33 to her monthly income. Debtor's self-reported monthly expenses, including the student loan payments, total $3,418.76. No back-up evidence has been submitted to support these amounts. Her expenses are listed as follows:

| Rent | $580.00 |
|---|---|
| Electric & Gas | $49.92 |
| Water & Sewer | $40.50 |
| Cell Phone | $75.00 |
| Cable & Internet | $38.29 |
| Car Loan[4] | $236.55 |
| Car Gas & Maintenance | $175.00 |
| Car Licensing | $17.25 |
| Car Insurance | $61.56 |
| Health Bills | $18.43 |
| Renter's Insurance | $16.01 |
| Groceries | $169.74 |
| Dining Out | $26.92 |
| Clothing | $33.71 |
| Personal Care | $32.00 |
| Housekeeping Supplies | $29.00 |
| Work Expenses | $38.59 |
| Charity | $400.00 |
| Personal/Other | $98.77 |
| Student Loan-Sallie Mae | $85.00 |

---

[3] Throughout the record, the parties refer to Debtor's net income as $2,544.30; however her paycheck stub reflects earnings of $2,534.30.

[4] On Debtor's Chapter 7 filing, she listed the balance of this debt as $7,961.00. If she has been making a monthly payment of $236.55 per month since filing in September 2010, Debtor should only have a balance of $3,466.55 remaining, or approximately 15 months of payments.

| Student Loan-ECMC | $297.02 |
| Student Loan-ISLLC | $799.50 |
| Personal Loan-Mother[5] | $100.00 |
| Total | $3,418.76 |

Debtor works approximately fifty (50) hours per week at her job. She has previously held secondary jobs to supplement her income, but her job requirements now impede additional outside employment. She has no plans to retire early.

Debtor is very involved in her church and considers tithing to be of the upmost importance. She allots for $400.00 per month in tithes to her church. Since filing, Debtor has averaged $357.92 per month in donations to her church. It is Debtor's opinion that tithing to her church is more important than paying back her student loans.

Contrary to Debtor's budget, since filing, Debtor has also spent an average of $83.32 per month on gifts to her friends and family, $91.82 per month on "Personal/Other" expenses, $54.73 per month on "Personal Hygiene" expenses, and $114.55 per month on "Household Items." Debtor stated during her deposition that she is "unwilling" to forgo gifts to her church, charity, family, or friends in any form.

---

[5] On Debtor's Chapter 7 filing, she listed that the balance on this loan was $2,500.00. If Debtor has been making a $100.00 payment each month since filing in September of 2010, she should only have six months left on this obligation.

Debtor stated that she does not anticipate any increase in her living expenses in the near future. Nor does she anticipate any decrease in her earnings. She also stated that she does not believe there are any additional funds that she could put towards her student loans beyond the payment of $85.00 that she makes each month to Sallie Mae.[6]

## CONCLUSIONS OF LAW

1. <u>Summary Judgment Standard</u>

Federal Rule of Bankruptcy Procedure 7056 incorporates Federal Rule of Civil Procedure 56. Rule 56(a) states in part: "[T]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The granting of "[s]ummary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." <u>Hayek v. City of St. Paul</u>, 488 F.3d 1049, 1054 (8th Cir. 2007). "Summary judgment is 'appropriate when only questions of law are involved.'" <u>In re Agriprocessors, Inc.</u>, No. 08-2751, 2012 WL 122570, at *3

---

[6] Debtor has an additional student loan with Sallie Mae, which was not consolidated. Debtor continues to pay this obligation every month, and Sallie Mae is not a party to this action.

7

(Bankr. N.D. Iowa Jan. 17, 2012) (quoting Timmerman v. Eich, No. 09–3072, 2011 WL 4018079, at *6 (N.D. Iowa Sep.12, 2011)).

The moving party carries the burden of showing that there is no genuine issue of material fact and the facts must be viewed in favor of the nonmoving party. Winthrop Res. Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465, 468 (8th Cir. 2004). "Once the movant has supported the motion, the non-moving party 'must affirmatively show that a material issue of fact remains in dispute and may not simply rest on the hope of discrediting the movant's evidence at trial.'" In re Houston, 385 B.R. 268, 271 (Bankr. N.D. Iowa 2008) (quoting Barge v. Anheuser–Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996)). A genuine issue of material fact exists if a reasonable fact-finder could return a verdict for the nonmoving party on the question. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "To determine whether summary judgment is appropriate, the Court looks to the law governing the merits of the dispute to determine what 'material facts' are at issue." In re Agriprocessors, Inc., 2012 WL 122570, at *4. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson , 477 U.S. at 248.

2. Student Loan Discharge Standards

The Bankruptcy Code prohibits student loans from being discharged in bankruptcy "unless excepting such debt from discharge under this paragraph would

8

impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). "Congress' intent in excepting student loans from discharge was clear: Congress wanted to prevent the 'undeserving student borrower from abusing the bankruptcy process.'" In re Cline, 248 B.R. 347, 349 (B.A.P. 8th Cir. 2000).

The term "undue hardship" is not defined by the Bankruptcy Code. In re Long, 322 F.3d 549, 554 (8th Cir. 2003). The Eighth Circuit analyzes undue hardship inquiries under the totality-of-the-circumstances approach. Id.

> In evaluating the totality-of-the-circumstances, reviewing courts should consider: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case.

Id. See also Walker v. Sallie Mae Serv. Corp. (In re Walker), 650 F.3d 1227, 1231 (8th Cir. 2011) (citing Long). Under an undue hardship analysis, the debtor has the burden of proving by a preponderance of the evidence that she qualifies for the exception in § 523(a)(8). In re Walker, 650 F.3d at 1230; see also In re Wilson, 270 B.R. 290, 293 (Bankr. N.D. Iowa 2001).

"Under the totality of the circumstances test, fairness and equity require each undue hardship case to be examined on the unique facts and circumstances that surround the particular bankruptcy." In re Long, 322 F.3d at 554. "Ultimately, the Court must make its judgment in light of the strong legislative policy against allowing the discharge of student loans in bankruptcy." In re Scholl, 259 B.R. 345,

348 (Bankr. N.D. Iowa 2001). "'While defining undue hardship is a question of law, . . . the determination of whether excepting a student loan from discharge will result in undue hardship for the debtor and the debtor's dependents is a question of fact.'" United States Department of Education v. Meling, No. 01-2027, 2002 WL 32107248 (N.D. Iowa 2002). "The determination that requiring a debtor to repay student loans would constitute an undue hardship is a factual finding . . . ." In re Cline, 248 B.R. at 349.

  a. Part One of Test: Debtor's Financial Resources

Under the first prong of the undue hardship — totality of the circumstances — analysis, "a fact finding court" must consider "the debtor's past, present, and reasonably certain future resources." In re Walker, 650 F.3d at 1231 (quoting In re Long, 322 F.3d at 554). "In considering [this prong], the court examines the **debtor's employment, work history, and earnings capability**." In re Limkemann, 314 B.R. 190, 194–95 (Bankr. N.D. Iowa 2004) (citing In re Cheney, 280 B.R. 648, 661 (N.D. Iowa 2002) (emphasis added)). Notably, the test is not strictly a measure of the debtor's current ability to repay the student loan, it is a determination of the debtor's reasonable future financial resources. See In re Schmidt, 294 B.R. 741, 751 (Bankr. W.D. Mo. 2003) ("The fact that the Debtors' present financial resources are not sufficient to meet all of their current monthly budget and to repay their student loans at the same time is not dispositive."); In re

10

Wilson, 270 B.R. at 293 ("Present inability to repay a loan does not suffice as a hardship.").

> Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt—while still allowing for a minimal standard of living—then the debt should not be discharged. Certainly, this determination will require a special consideration of the debtor's present employment and financial situation—including assets, expenses, and earnings—along with the prospect of future changes—positive or adverse—in the debtor's financial position.

In re Long, 322 F.3d at 554–55.

    (i)    <u>Debtor's Employment & Work History</u>

Debtor is currently employed in a salaried position earning $44,255.04 annually. Although Debtor struggled to find employment in her field of choice after completing her master's degree, she has been gainfully employed for all of her adult life, while not enrolled in school. She now holds a steady job in the field of her choice, and has no reason to believe that this employment will end. She is not disabled, either mentally or physically, and the record does not indicate she suffers from poor health. The record on employment and work history is undisputed for purposes of summary judgment.

    (ii)    <u>Earning Capability</u>

Debtor asserts there are fact issues precluding summary judgment relating to her earning capacity. In particular, she claims that there are genuine issues of material fact regarding tax refunds, her realistic ability to increase her earning

capability, and the characterization of Debtor as young and at the outset of her career. The Court will not engage in a full discussion of these facts but agrees with Debtor that there are genuine issues of material fact for trial. Debtor has presented sufficient evidence, at a minimum, to raise factual questions about whether Debtor's tax refund is definite, whether she has a realistic ability to increase her earning capacity, and whether she could be characterized as young or in the early part of her career.

      b.     <u>Part Two of the Test: Reasonable and Necessary Living Expenses</u>

The Court also finds there are genuine issues of material fact on the second part of the totality of the circumstances test. The second part of the test considers "a calculation of the debtor's and her dependent's reasonable necessary living expenses." <u>In re Long</u>, 322 F.3d at 554. "The debtor must show that he has done everything possible to maximize his income and to minimize his living expenses." <u>In re Clark</u>, 273 B.R. 207, 210 (Bankr. N.D. Iowa 2002). "To be reasonable and necessary, expenses must be modest, not extravagant, and commensurate with the debtor's resources." <u>In re Mulherin</u>, 297 B.R. at 565.

Defendants argue that Debtor cannot show reasonable and necessary expenses as a matter of law because of her excessive living expenses and monthly tithing to her church. Defendants argue that eliminating Debtor's discretionary spending and donations to charity would provide her a meaningful chance to make

12

student loan repayments. Debtor asserts that she spends "like a miser" and her discretionary spending is "far below the Internal Revenue Service's collection standards." Further, Debtor asserts that her charitable donations should not be considered in the Court's analysis, and even if the Court does consider them, Debtor's contributions are reasonable.

    (i)    <u>Living Expenses</u>

The Court finds that there is a genuine issue of material fact as to Debtor's reasonable and necessary living expenses. Defendants argue that many of the categories in Debtor's budget are vague and potentially overlapping. Debtor budgets for "personal/other," "personal hygiene," "work expenses," and "housekeeping supplies." Other categories within Debtor's budget, such as "dining out," "cable/internet," and "cell phone" raise additional concerns about necessity expenses. Debtor also has a budgeted amount for "health bills," but also contributes to and maintains a health spending account. These vague, questionable, and confusing entries require — at a minimum — additional explanation at trial.[7] Many courts have scrutinized whether a debtor seeking an

---

[7] Debtor's reported net income of $2,534.30 per month includes deductions of $177.90 for a retirement account and a $10.00 donation to the Ronald McDonald House. Courts have questioned retirement plan contributions as necessary and reasonable expenses to a debtor living minimally. See In re Pobiner, 309 B.R. 405 (Bankr. E.D.N.Y. 2004) (characterizing the voluntary 401(k) contributions of debtor's spouse as a luxury which demonstrated that debtor had failed to minimize his expenses); In re Naranjo, 261 B.R. 248 (Bankr. E.D. Cal. 2001) (pointing to

13

undue hardship discharge is truly maintaining a minimal standard of living. See In re May, 368 B.R. 850, 859–60 (Bankr. D. Neb. 2007); In re McLaughlin, 359 B.R. 746, 753 (Bankr. W.D. Mo. 2007); In re Clark, 273 B.R. 207, 210 (Bankr. N.D. Iowa 2002); In re Wardlow, 167 B.R. 148, 151 (Bankr. W.D. Mo. 1993). Debtor's budget, submitted within her Objection to Joint Motion for Summary Judgment, paints a very different picture than the pre- and post-petition spending records produced by Defendants from Debtor's answers to interrogatories. In light of this discrepancy, the Court finds a material issue of fact exists about monthly expenses and their necessity. Because of the uncertain information surrounding Debtor's monthly budget and expenses, there are material issues of fact as to Debtor's reasonable and necessary living expenses.

    (ii)    Tithing

Defendants next argue that Debtor's tithing is an unreasonable expense on the undisputed facts here. In In re Cline, the Bankruptcy Appellate Panel for the Eighth Circuit upheld a lower court's finding that a $25.00 per month tithe was "modest and reasonable under the circumstances" in an undue hardship analysis. In re Cline, 248 B.R. at 349. Following Cline, this district has held that in undue hardship analysis, charitable contributions are not per se unreasonable. In re

---

debtor's monthly retirement contribution of $269.00 as evidence that debtor enjoyed better than the minimal standard of living); In re Shirzadi, 269 B.R. 664 (Bankr. S.D. Ind. 2001) (citing debtor's voluntary retirement plan contributions of $400.00 per month as evidence of her failure to minimize her expenses).

14

Meling, 263 B.R. at 279 (finding that a $100.00 per month tithe was not unreasonable); see In re Halverson, 401 B.R. 378, 387 (Bank. D. Minn. 2009) ("Tithing is not per se unnecessary and unreasonable."). In Meling, the court rejected the Bankruptcy Court of the District of Idaho's holding in In re Ritchie, 254 B.R. 913, 919-21 (Bankr. D. Idaho 2000), and the Bankruptcy Court of the Northern District of Texas' holding in In re McLeroy, 250 B.R. 872, 879 (Bankr. N.D. Tex. 2000), which both held that all charitable contributions are an unreasonable and unnecessary expense. Id. While charitable contributions are not automatically unreasonable, the court must review factors and circumstances that could make the charitable contributions unreasonable.

Debtor gives approximately 11% of her gross income or 16% of her net income, to charity. These donations are for her church, the Ronald McDonald House, and Operation Christmas Child. No evidence was presented as to whether Debtor's tithe is a necessary part of membership in her church, without which she could not attend services. See In re Halverson, 401 B.R. at 387. Debtor testified in her deposition that giving to her church was very important to her religious beliefs. As the reasonableness of Debtor's tithing and charitable contributions is a factual determination, and the factual record needs further development, summary judgment is not available on this issue.

    c.    <u>Third Part of Test: Other Relevant Facts and Circumstances</u>

As there are factual disputes about the reasonableness of Debtor's expenses, the Court need not discuss part three of the test—whether there are other relevant facts or circumstances that would support Debtor's discharge request.

## CONCLUSION

After reviewing the evidence and carefully considering all the arguments raised by counsel, this Court finds that genuine issues of material fact prevent the Court from entering summary judgment at this stage.

**WHEREFORE**, Defendants' Joint Motion for Summary Judgment is **DENIED**.

Dated and entered: April 13, 2012

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE